IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-124-FL

| | |
|---|---|
| PERRY MURRELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Perry Murrell ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and disability insurance benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-17] be granted, Defendant's Motion for Judgment on the Pleadings [DE-19] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 1, 2010. (Tr. 1833.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (*Id.*) On June 28, 2011, a hearing was held before Administrative Law Judge Edward Bowling ("ALJ"), who issued an unfavorable ruling on September 8, 2011. (*Id.*) Plaintiff's request for review by the Appeals Council was denied March 21, 2013, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.)

Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I.  Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### II.  Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or

equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past relevant work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found that Plaintiff had engaged in substantial gainful employment since his alleged onset date of June 30, 2005, but the ALJ chose to proceed with the sequential evaluation process.[1] (Tr. 22.) Next, the ALJ determined Plaintiff has the following severe impairments: osteoporosis in various joints, degenerative disc disease of the spine, arthritis of the upper extremities, and left shoulder rotator cuff tendinitis. (*Id*.) At step three, the ALJ concluded Plaintiff's impairments, considered in

---

[1] There appears to be some confusion regarding Plaintiff's alleged onset date. Plaintiff asserts that when he applied for disability benefits, he correctly reported that he stopped working in October 2009, but that his medical conditions caused him to make changes in his work activity as early as June 2005. (Tr. 186-87.) Based on this information, the Social Security field office noted that the disability onset date should be reflected as October 10, 2009. (TR. 182.) The ALJ found it impossible to determine how long Plaintiff had continued working because "claimant never reported this work and never paid taxes on this income." (Tr. 22.) Finding the issue moot, however, the ALJ chose to proceed with the sequential evaluation process. Although the basis for the ALJ's mootness finding is unclear, no harmful error resulted from the ALJ's findings at step one. The evidence of record establishes that Plaintiff has not engaged in substantial gainful activity since October 10, 2009; thus the relevant period at issue in this case is October 10, 2009, through December 31, 2010, Plaintiff's date last insured.

3

combination, were not severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff has the ability to perform light work with the following restrictions: (1) a sit/stand option every 30 minutes; (2) only occasional reaching with the non-dominant left upper extremity; (3) can climb ramps and stairs, but not ropes, ladders, or scaffolds; (4) no crawling; (5) avoid concentrated exposure to hazards; (6) "as a result of pain, the claimant is limited to simple, routine, and repetitive tasks and can apply common sense understanding to carry out oral, written or diagrammatic instructions"; (7) "[t]he claimant has no difficulties getting along with co-workers or the public" but "needs a low stress type of job"; and (8) limited to frequent, but not constant, fine and gross manipulation with the upper extremities. (Tr. 24.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms not fully credible. (Tr. 25.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a fishing vessel deck hand and farm worker. (Tr. 27.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (*Id.*)

## IV.    Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision on several grounds. Plaintiff first contends that the ALJ failed to properly assess the medical opinions provided by his treating physician and the non-examining state agency physician. Second, Plaintiff argues that the ALJ erred in evaluating his credibility. Third, Plaintiff maintains that the Commissioner erred by

4

finding his connective tissue disease to be non-severe.  Finally, Plaintiff asserts that the VE's testimony was not responsive to the ALJ's hypothetical question and fails to provide substantial evidence to prove the existence of other work that Plaintiff can perform.

    **A.    Medical Opinions**

The court first addresses Plaintiff's argument that the ALJ erred in giving more weight to the non-examining consultant in this case than to his treating physician.  The general rule is that a treating source's opinion is entitled to more weight than a non-treating source's, and an examining source's opinion should be accorded more weight than the opinion of a non-examining source.  20 C.F.R. § 404.1527(c).  "Generally, [the Commissioner] give[s] more weight to opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  *Id.*  Thus, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2).  "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted).

"Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner."  *Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011); *see also* 20 C.F.R. § 404.1527(d)(1).  The Commissioner will consider a medical opinion "on the nature and severity of [a claimant's] impairments," but a

5

statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is not "given any special significance."  20 C.F.R. § 404.1527(d)(2).

Plaintiff complains that the ALJ failed to give adequate weight to the opinion of his treating physician, Dr. Kevin M. McKnight.  Dr. McKnight is a board-certified rheumatologist who began treating Plaintiff shortly before the June 28, 2011, administrative hearing in this case.  Prior to the ALJ's decision, Plaintiff was seen by Dr. McKnight on two occasions.  Treatment notes from June 7, 2011, indicate a history of pain in Plaintiff's back, shoulders, fingers and legs.  On examination, Plaintiff exhibited limited motion in his left shoulder and was given a steroid injection for what Dr. McKnight characterized as "left shoulder rotator cuff tendinitis pain." (Tr. 308.)  Dr. McKnight also prescribed prednisone.  (*Id.*)  Plaintiff returned to see Dr. McKnight on July 14, 2011, reporting moderate improvement and no medication side effects. (Tr. 259.)  Poor range of motion in the left shoulder was noted upon examination.  Laboratory tests revealed "a positive ANA, but negative rheumatoid factor and high C-reactive protein." (*Id.*)  Dr. McKnight noted "obvious[] . . .osteoarthritis of the left shoulder" but questioned "whether [Plaintiff] has lupus, seronegative rheumatoid arthritis, or a case of sarcoidosis for the last two years."  (*Id.*)

On July 17, 2011, Dr. McKnight completed a medical source statement, indicating that Plaintiff had been referred to him by treating family nurse practitioner, Sherry Kent.  Dr. McKnight stated that he had examined Plaintiff on two occasions since June 7, 2011, and that it was his opinion that Plaintiff has "diffuse chronic osteoarthritis which is severe in his left shoulder," as well as "osteoporosis demonstrated by . . . wedge compression deformities, or compression fractures, in his spine."  (Tr. 311.)  Noting laboratory results that strongly indicate an inflammatory process, Dr. McKnight stated that he "do[es] not believe [Plaintiff] has

6

Rheumatoid Arthritis, but . . . suspect[s] that he has Lupus or perhaps another autoimmune disease." (*Id.*)

As a result of Plaintiff's pain and other symptoms, Dr. McKnight opined that Plaintiff can lift five to ten pounds, can walk approximately one block at a time and "can be on his feet a total of about two hours per day." (Tr. 312.) Dr. McKnight stated that Plaintiff would need to take unscheduled breaks of approximately fifteen minutes in duration once per hour, on average. (*Id.*) According to Dr. McKnight, Plaintiff has "swelling, pain and stiffness in his hand and fingers" resulting in the inability to use his hands for grasping or fine manipulation more than forty percent of the day. *(Id.)* He is also unable to reach with his left arm. (*Id.*)

The ALJ accorded little weight to Dr. McKnight's opinions. (Tr. 26.) As the basis for his decision, the ALJ stated that "Dr. McKnight only examined the claimant on two occasions" and his opinions are based on the statements of "Ms. Kent whose statements regarding the claimant's limitations are faulty and inconsistent with treatment notes." (*Id.*)

The Commissioner's decision adopting the ALJ's findings is erroneous for a number of reasons. First, the evidence of record does not support the ALJ's findings that Dr. McKnight "based his statements on the opinion of Ms. Kent." Like the state agency physician (whose opinion the ALJ gave great weight), Dr. McKnight reviewed the treatment notes of Sea Breeze Family Practice where Ms. Kent practices. (Tr. 308.) However, the medical records do not in any way suggest that Ms. Kent's diagnoses or opinions were the basis for Dr. McKnight's opinions. Rather, both Dr. McKnight's treatment notes and medical source statement indicate that his diagnoses and opinions are based, in large part, on diagnostic testing and his physical examination of Plaintiff. For example, Dr. McKnight notes that Plaintiff's osteoporosis is demonstrated by wedge compression deformities or compression fractures in his spine as

7

evidenced by medical imaging and that laboratory testing revealed the presence of antinuclear antibodies and an elevated C-reactive protein, indicative of an autoimmune disease. (Tr. 259.) He notes that further evaluation is needed but that Plaintiff is unable to afford x-rays or bone density testing. (Tr. 313.)

Second, the ALJ's decision does not indicate whether he considered the appropriate factors in weighing Dr. McKnight's opinion. Assuming that Dr. McKnight's opinions were not entitled to controlling weight, the ALJ was nevertheless required to consider the following factors in determining the weight to be given his opinions: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Parker*, 792 F. Supp. 2d at 894. While the ALJ is not required to engage in a point-by-point analysis of the evidence as it relates to each of the factors, he is required to provide "good reasons" for the weight given to a treating source's opinions. *Taylor v. Astrue*, No. 7:10-CV-149-FL, 2011 WL 2669290 (E.D.N.C. July 7, 2011). The fact that Dr. McKnight had examined Plaintiff on only two occasions is not "good reason" to reject his opinions where, as here, the ALJ accorded great weight to the opinions of the state agency consultant who did not examine Plaintiff at all.

Moreover, treatment notes made by Dr. McKnight following the ALJ's decision are consistent with his earlier medical records and opinions. (Tr. 260, 313.) These records were submitted to the Appeals Council but not considered because the Appeals Council determined that

"the information is about a later time" and "does not affect the decision about whether [Plaintiff was] disabled at the time . . . last insured for disability benefits." (Tr. 2.) Although these records reflect treatment that was provided after Plaintiff's date last insured, both Dr. McKnight's medical records and medical source statement indicate that the impairments, which the ALJ found to be severe, are secondary to lupus or a connective tissue disease that existed prior to the expiration of Plaintiff's coverage on December 31, 2010. (*See e.g.*, Tr. 313 (indicating that Plaintiff has had lupus, rheumatoid arthritis or sarcoidosis for the last two years); Tr. 312 (stating that the enumerated limitations have existed since at least December 2009).) As such, the records submitted to the Appeals Council relate to a period of time prior to the ALJ's decision and should have been considered in determining the appropriate weight to be accorded Dr. McKnight's opinions.

The ALJ further erred in assigning "great weight" to the state agency consultant's opinions.[2] As the consultant's report was completed on June 21, 2010, he did not have the opportunity to review Dr. McKnight's medical treatment records or medical source statement. Thus, the ALJ's finding that the consultant's opinions "were the product of thorough review of the medical evidence of record and are consistent with the longitudinal medical record" is not supported by substantial evidence.

Furthermore, the ALJ's RFC determination is not consistent with the opinions of the state agency consultant. Although he purportedly assigned "great weight" to the consultant's opinions, the ALJ imposed a number of postural and manipulative limitations. As the state agency consultant's opinion includes no postural or manipulative limitations (Tr. 286) and the ALJ failed

---

[2]In his decision, the ALJ states that "the State agency physician*s* submitted detailed reports" and that he has given "the State agency physician*s'* findings great weight." (Tr. 26 (emphasis added).) However, the record in this case indicates only one state agency consultant, A.K. Goel, M.D., who prepared one report, which is dated June 21, 2010. (Tr. 281-89.)

to provide any reasons for this deviation, the court is unable to determine whether the Commissioner's decision is supported by substantial evidence.

### B. Severity of Impairment

The Commissioner also erred in failing to consider evidence that Plaintiff suffers from connective tissue disease at step two of the sequential evaluation process. Noting a positive "RNA test with no definitive diagnosis," the ALJ found that "[t]he evidence does not show that the . . . positive RNA tests significantly limited his ability to perform basic work activities and therefore are not considered severe impairments."[3] (Tr. 23.) While the ALJ was correct in determining that the test results themselves do not limit Plaintiff's abilities, he failed to consider whether Plaintiff is impaired as a result of lupus or another connective tissue disease as indicated by these tests. As Dr. McKnight's medical notes strongly suggest that Plaintiff's symptoms are caused by this condition, the Commissioner erred in failing to determine whether Plaintiff is severely impaired as a result of a connective tissue disease.

### C. Vocational Expert's Testimony

Plaintiff also contends that the testimony provided by the vocational expert was not responsive to the ALJ's hypothetical and therefore does not support the Commissioner's finding that there exists other work in the national economy that Plaintiff can perform. Specifically, Plaintiff argues that the jobs identified by the vocational expert (ticket taker, marker and photocopying-machine operator) do not accommodate the ALJ's limitation to occasional reaching with the non-dominant hand. Plaintiff's contention is without merit. The vocational expert testified that Plaintiff could perform these jobs with the limitations imposed by the ALJ.

---

[3] Although referred to as an RNA test, it appears as though the ALJ is referring to positive RNP and ANA tests, both of which indicate the presence of an autoimmune disease.

Although the Dictionary of Occupational Titles and the Selected Characteristics of Occupations define these occupations to include frequent reaching, the definitional specifications do not require the use of *both* upper extremities in reaching. *See Dictionary of Occupational Titles* Code Nos. 344.667-010, 209.587-034, 207.685-014 (4th rev. ed. 1991); U.S. Dep't Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* §§ 05.09.03 at 98, 05.12.19 at 134, 09.05.08 at 369 (1993). As there is no evidence of any impairment with respect to Plaintiff's dominant arm that would impair his ability to perform frequent reaching with that arm, Plaintiff has not shown that the ALJ's findings at step five are not supported by substantial evidence.

### D. Plaintiff's Credibility

Finally, Plaintiff contends that the ALJ failed to properly evaluate his credibility. Plaintiff maintains that the ALJ inappropriately discredited his testimony for failure to obtain treatment without consideration of Plaintiff's financial limitations and because Plaintiff claimed a disability onset date in 2005 although he worked until 2009.

It is clear from the evidence in this case that Plaintiff has no insurance and that his resources are limited. His wife testified that she has been paying for his medicine and doctor's bills but "sometimes [has] to let one bill go to, you know, to make sure he has his medicine." (Tr. 35.) Additionally, Dr. McKnight indicated that Plaintiff is unable to afford certain medication and diagnostic testing needed. (Tr. 311, 313.)

In assessing Plaintiff's credibility, the ALJ stated:

> [T]he undersigned finds that the testimony of the claimant is not fully credible concerning the severity of his symptoms and the extent of his limitations. Neither the severity nor the extent is supported by the objective medical evidence of record. The claimant alleges that he experiences constant back, leg, and shoulder pain that is an 8-9 on a 10-point pain scale and that his condition is worsening. However, the medical evidence of record reveals that treatment for the

11

> claimant's shoulder, back, and leg pain has been relatively sparse and has consisted of primarily conservative medication management with few if any recommendations for surgery, pain management, or other more aggressive treatment options that would be expected for pain of the degree alleged . . . .
>
> . . . .
>
> Further, although the claimant alleges an onset date in 2005, his testimony reflects that he was working at substantial gainful activity levels into late 2009, albeit without reporting the income.

(Tr. 25.)

As set forth above, the undersigned recommends that this case be remanded to the Commissioner for reevaulation of the weight accorded to the medical opinions provided and to determine whether Plaintiff is severely impaired as a result of a connective tissue disease. The Commissioner's determination of these issues may also affect her assessment of Plaintiff's credibility. Consequently, the court need not address the ALJ's credibility assessment but should instruct the Commissioner to reevaluate Plaintiff's credibility in light of the Commissioner's findings on remand.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-17] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-19] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon

grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 2nd day of May 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge